of America. Our units have received 15 minutes to arrive. Ms. Joan Morgan, can you tell us who you are? Good morning. My name is Joan Morgan. I'm here for Frank Christopher. If I can, I'd like to reserve two minutes for rebuttal. Very good. Thank you very much. Judges, this is an appeal from the denial of a 2255 motion from Judge Edmonds in Detroit. The grounds of the motion were ineffective assistance of counsel. Judge Edmonds denied the motion based on the government's response to the motion without holding an evidentiary hearing. She tried the case, though. She did try the case. She tried this case together with the cases of 90 other defendants in this matter. She was pretty familiar with it, though. She's very familiar with it. But I will say this. Although this case was indicted as one case, the government kind of divided the case into various little subsections. And so her having heard the trials of other defendants in this matter would not necessarily familiarize her with Mr. Christopher's case because the cases were divided and they were tried after having been divided by the government. She heard the case. She heard the division that involved this lawyer. Mr. Christopher was tried alone and she absolutely heard this case? Yes. I mean, I ask that because presumably there's some harm that's got to be shown, or at least you could argue that there's harm that's got to be shown. It is a little strange to have her just rely on the government's reasoning. I mean, that's not what she normally does, I guess. But it's not like she didn't know how the case was tried or how well it was tried because she was there watching it be tried, right? She was there watching it be tried. There's no dispute about that. The issue, however, I think pertains not just to Mr. Christopher's trial but to things that happened which are not on the record. And for that reason, I argue that Mr. Christopher should have received an evidentiary hearing before Judge Edmonds. And let me, if I can, try to be specific. Mr. Christopher's claim is that he and his defense attorney used cocaine together before the trial in this matter. And that cocaine was supplied by Mr. Christopher to his defense attorney. I think it's important to look at the transcript of the status conference in this case, which was just a few weeks before the trial. Because at that status conference, to me, the record shows that defense counsel was unfamiliar with the facts of the case and the evidence against Mr. Christopher. The status conference was held together with one other co-defendant. And the government agreed at that status conference to provide a bill of particulars for the co-defendant. But the prosecutor indicated on the record that as to Mr. Christopher, the situation was completely different. And the judge agreed with him. And the prosecutor specifically said that there were over ten phone calls between Mr. Christopher and Robert Burton, a co-defendant, who was cooperating with the government. And that there was an investigative report as to Doug Burnett, who was another person who was cooperating with the government. In addition to that, both Mr. Burton and Mr. Burnett had testified, as Judge Edmond said, on four or five occasions before Mr. Christopher's trial. So she indicated to defense counsel then that he wasn't getting any more discovery. He wasn't getting a bill of particulars. He should be very aware of what the evidence was against Mr. Christopher. And the record, in my opinion, indicates that he was not aware of what the record or what the evidence was against Mr. Christopher. How do we determine that in the record? Well, when Judge Edmond said to Mr. Warshaw, Mr. Burnett had testified four or five times previously, and you should be aware of that. The government's indication... Did he say he wasn't aware of that? He said, quote, very well, Your Honor, and that's the end of it. And I guess that contributes to my argument as to why there should have been an evidentiary hearing, because that's an issue that is not definitively resolved by the record in terms of what he did or did not know. But what should he have said under your theory? Suppose she was right. You've got all this stuff. You've heard it. He said, very well, Your Honor. I mean, how does that show prejudice? Well, to me, if he was, the record would be more clear if he had responded by saying to Judge Edmonds, I'm aware of the discovery and we've reviewed it, or... So your argument is just how he put his, the sentence structure he used to say, I'm aware? Not just the sentence structure, but my point, I hope, is that his response to Judge Edmonds is not clear, and that's something that should have been clear before Judge Edmonds made a decision about his effectiveness. My argument is that his advice to Mr. Christopher to go to trial was erroneous, based not only on their cocaine use during the pretrial phase, but also because his advice to Mr. Christopher to go to trial was erroneous because the government had a very strong case against him. And the only thing that is on the record right now as to that issue is Mr. Christopher's declaration in which he says that when he asked his lawyer whether he should go to trial or not, the lawyer indicated that one, conspiracy cases were difficult to prove, and two, the government's case was weak against him. My position is that had the discovery been reviewed, both the defense attorney and Mr. Christopher would have understood that the case was not weak. It seems to me your case is very strong. If he indeed did review it and found it to be strong but told his client nonetheless he thought it was weak. And we don't know that from the existing record, which I assume or I would argue is one of the reasons why there should have been a hearing with Judge Edmonds. Your argument that there should have been a hearing to determine what advice was given by the attorney, what the attorney's motivation or reason for the advice that he provided, and what the prejudice or consequences were that flowed from what the attorney did. And right now we don't know any of that. Is that basically your argument? That and in addition to that, what his advice was based on. Was it based on a review of the discovery or was it based on the fact that he hadn't reviewed the discovery? Now this was a Section 2255 proceeding. Not only was there not an evidentiary hearing, but the judge didn't even get an affidavit from this attorney. There was really nothing provided from the attorney. There was nothing. Okay. This was an attorney that he retained and then asked to have it be brought under the CJA? Yes. So it's sort of the opposite of a case where someone got an attorney that they didn't want. This is a client-selected attorney that the government was paying for. The government was paying for once he was appointed, absolutely. The client also was aware of the alleged cocaine usage. Yes, because his declaration indicates all of that. He indicates that he retained Mr. Warshaw, that soon after he was retained, Mr. Warshaw was appointed, and, of course, the docket sheet also. I guess it's formally irrelevant. It seems a little bit counterintuitive that you can make the same complaints about people that you personally selected in terms of how effective they were as opposed to somebody that's foisted on you or even that you hired at the last minute. And I hear you, and I understand what you're saying, but I don't think that the cases distinguish between either appointed or retained counsel. I understand. Nor counsel who are, as you would say. In addition, the same kind of perhaps irrelevant consideration is that this claim is brought because the defendant finds out that you can claim ineffective assistance of counsel based on cocaine usage. That's what his letter says, right? His letter? His letter says, I talked to somebody, I found out somehow that cocaine usage, that's why I'm so delayed in raising this. I don't have the letter in front of me. You know the letter I'm talking about. I do. It's engendered by the fact that he's heard somehow that cocaine usage by an attorney can be ineffective assistance of counsel, and then the light bulb goes on. Wait a minute, I know my counsel uses it because I sold it to him. And that's what led to this 2255 motion. The letter is absolutely what led to the 2255 motion. There's no question about that. I think I'm finished unless there are any other questions. Thank you. Thank you. Good morning, and may it please the Court. Shane Crawley for the United States. The problem with this case is one of assumptions. There are a number of assumptions being made with respect to Mr. Christopher's claim, whether with respect to the advice being given by his attorney, or even the fact that he was using cocaine, or the purported conflict that he has raised. Doesn't that add to the argument that there should be a hearing? No, Your Honor, I do not believe that does. And the reason for that is an evidentiary hearing is not required when the record makes clear that his claim would fail. And here we have a situation where Judge Edmonds presided over the trial. It is true that this was a complex 91-party, 35-count indictment, but if we look at the specific allegations against this defendant, it was a very small, discrete conspiracy involving the distribution of cocaine with a subset of that. I'm not quite following you when you say she presided and that placed her in some superior position here. There's nothing that was shown to her by way of evidence at the trial about this defendant using cocaine with his attorney, was there? No, Your Honor. So, I mean, the things that he claims would be presented in the evidentiary hearing, she didn't obtain any, the judge didn't obtain any evidence about that from the trial that she presided over? That's correct, she did not. Well, what's your point in saying she presided over the trial? Because that sounds rather irrelevant to the allegations that this man is making. The reason why it's relevant is because, as this Court has long recognized, a district judge that presides over the collateral proceedings, in this case the trial against Mr. Christopher, may rely on their own recollection of the trial to make credibility determinations. Here, Mr. Christopher proceeded to trial and took the stand, and Judge Edmonds is allowed to rely on her recollection of the case against him, as well as his own testimony, to then make a credibility determination as to the allegations set forth in his letter and subsequent declaration, raising the 2255. That's why I believe it's relevant. How is she going to make credibility determinations based on events and alleged that she doesn't have any information about? Are you saying that she would determine from the trial that the man is totally incredible and she should discount any and everything that he would say about any topic? That's certainly a credibility determination that she could find. But she didn't say that. She didn't say that that's what her decision was based on. All she said was she's denying the motion for reasons stated in the government's brief. Isn't that all she said? It is correct that her ruling is perhaps not as clear as one would like. Well, it's actually very clear in the sense that she says she's denying the motion for reasons stated in the government's brief, period. Certainly, Your Honor. So credibility determinations and all that didn't enter her decision. Well, as part of the government's brief, there was an argument that even if Mr. Christopher's allegations were true, that he still is not able to establish that his attorney's performance was both deficient and that he was prejudiced by that performance under Strickland. Here's what I think her argument is, and here's why I'm not following you, if I may. She's saying we've got a fellow on drugs who's a lawyer, who probably should have his license lifted if he doesn't already, just for that one aspect, and that he improperly advised his client that he didn't have a strong, that the government didn't have a strong case and he should try it. That's what she says. Your response to that is something like, well, the guy maintained his innocence, therefore, even if he said that, it's immaterial, which, again, doesn't make much sense because the Supreme Court has said you can say you're innocent, but you can still plead guilty to cut your losses. No, that's not exactly what I'm saying. It's not the fact that he put the government to its proof and proceeded to trial. It's the fact that he took the stand and denied having any involvement in the distribution of cocaine and now is saying, oh, no, wait, I did, and I want to have the plea offered. It's essentially he wanted to take a shot at going to trial. But the Supreme Court says, don't they, that you can be innocent and still plead guilty rather than take the risk of a trial, which might give you more term. So if he was properly advised, it's her argument. I'm not saying it's right or wrong. If he were properly advised, he might well have taken the plea, and instead she's saying this drug addict lawyer didn't advise him and he went ahead with the trial, innocent or not. I think that you were correct that the fact that he proceeded to trial is not dispositive and does not foreclose his ability to now come back and say, no, I would have taken that plea had I known the case against me. The problem is he's claiming that he did not recognize the case against him, but even the record at trial suggests that that is not the case. And if we look at Appellant's argument earlier, during the pretrial conference, whether or not his attorney was familiar, this was such a small conspiracy. Again, there were only three witnesses. That's certainly ample time, three weeks ahead of trial, to prepare your case and prepare your client for trial. And when Mr. Christopher took the stand, he did not deny. I mean, he actually acknowledged being aware of the phone calls. That was one of the questions asked, and he did not say, I've never heard these. He did not say, this is the first time I've heard this. He actually had a counter story where he said, no, these recordings are not between me and my source of supply where I'm arranging cocaine deals. He said, actually, this is an attempt to arrange a loan so I can save my house for foreclosure. Now he's trying to come back and say, actually, no, I was distributing cocaine, and one of my buyers was my attorney. So I think that is the reason why she was allowed to make a credibility determination and find both the letter and the declaration wholly incredible. And that is one of the reasons why an evidentiary hearing is not required, both where the facts alleged are contradicted by the record or where they're incredibly incredible, which I submit occurred here. But even if they were credible, Mr. Christopher has not been able to satisfy either Strickland or the modified approach under Sullivan. The issue of conflict wasn't raised earlier, but certainly we would submit there was no actual conflict here. And the reason for that is, unlike the primary case raised by Mr. Christopher, Ruggiero v. United States, there was no open investigation of his attorney while this was transpiring. There have to be a number of assumptions made by the judge in order to reach a conflict here. One, we have to assume that as part of the plea agreement that there was actually a cooperation provision. There's nothing in the record to suggest there was, yet they want this court to assume that. And if you look at the status of the proceedings, most of the defendants that were in Mr. Christopher's conspiracy, again, he was in a small subset of the overall conspiracy, the overall indictment. There were 17 defendants involved in his one count. Almost all of them had already pled or been convicted by this point, because it was already 25 months post-indictment. So assuming that there's a cooperation provision, that's an assumption that needs to be raised for there to be a conflict of interest. Then, if we assume that there was a cooperation provision, we have to then make the assumption that his attorney was motivated by that in order to prevent his own prosecution. But there's no indication that the government or this particular prosecutor was actually investigating or intending to prosecute this attorney. And so for that reason, we think there's no actual conflict in order for Sullivan to apply. What if you had, let's speak hypothetically, a situation where you have an attorney who's, by virtue of using drugs, is just, you know, out to lunch when he should be working, all right? He's just not helpful at all. And the defendant kind of wants to go to trial because he hopes he can get off and thinks that he has a 60, 70 percent chance of winning. And any competent lawyer, if the lawyer looked at the evidence, would know that he only had a 5 percent chance of winning, but doesn't tell him because he's blotto. All right. Is that ineffective assistance of counsel? No. And, in fact, this Court has held... Not... I think there are two issues. One is, is it deficient performance? And then, was the client prejudiced by it? And I'll break that down. This Court has held that cocaine... You would say it is deficient performance, not to advise him of the much reduced chance of winning. It could well be. All right. Enough to get to a hearing. It could well be. Well, whether there's a hearing or not, I think, would turn on whether there was prejudice. There's a separate issue because both... Well, I understand, but before we get to the prejudice, if it's enough to get to a hearing, find out whether the lawyer actually did give him that advice or gave him some advice, at least advised him that it would be more difficult than a 60% chance of winning. We're still in my hypothetical. Certainly, in your hypothetical. I understand what you're saying. I think here the problem is that Mr. Christopher was aware of the plea offer. He was aware of the vast disparity between what he was facing if he went to trial versus what he would have received had he pled guilty. And, fortunately, that was made on the record. This predated Lafler and Frye. Right. But an unadvised evaluation of that evidence is different from a lawyerly advised evaluation of that evidence. Certainly. But even if we assume his attorney did advise him, the decision to plead guilty ultimately rests with the client. Right. But we're talking about ineffective. We are. Or are we in prejudice now? I would submit, and this Court has held in Smith v. United States, that even when a client does not plead guilty in the face of overwhelming evidence, that doesn't render the performance deficient because ultimately it's the client's decision. And we don't know. It is, but the client is entitled to an informed advice from his attorney. That's what I'm trying to get at. Certainly. I don't know whether you're talking about the performance or the prejudice. Well, in Smith it was actually a performance issue. A performance issue. So it's not ineffective performance to advise that the client has a legally questionable view of his chances of success. Hypothetical, which is factually distinguishable from Smith. It would certainly raise the issue of whether the attorney met an objectively reasonable standard. Then there would be the issue of prejudice. And if the prejudice could be resolved on the record before the Court, I submit that no evidentiary hearing would be required. I understand that. So if we assume for the moment that there's some situation like that, something parallel to that going on, then the question is whether Judge Edmonds could tell from her knowledge of what was going on, whether it would have made any difference to this defendant. Absolutely. Presumably it wouldn't because he knew that there were ten phone calls and he was actually participating in those calls, so he knew how incriminatory they might be. And that's the basis for, seems like that's the strongest basis for affirming here. Absolutely. Absolutely. The evidence was before him. He was well aware and submitted an alternative theory and now is trying to come back and say, actually, no, I was distributing cocaine. And as I said earlier, that decision rests solely with Mr. Christopher, and that does not in and of itself render his attorney's performance deficient. Okay. If there are no further questions, thank you very much. Thank you. Judge Rogers, can I just try to answer the question you just asked? Sure. Thank you. I have a feeling I know what you're going to say. I was curious what he would say. I'm less interesting. We've never argued, nor am I today, that an attorney's use of drugs or alcohol or any other basis of incompetency constitutes ineffective assistance per se. That's why I was asking the question in terms of what he did. And that's exactly why I think a hearing should have been held in front of Judge Edmonds to determine what Mr. Warshaw's two bases of advice for Mr. Christopher to reject the plea offer were. Was the government's case weak? And, of course, we know now it wasn't. And whether or not he had looked at discovery and gave bad advice despite having done that. And I think most of us would agree that it is not difficult for the government to prove a conspiracy charge, which was the second part of his advice. Thank you. What he's conceding is the stronger argument is the prejudice argument. Right. The prejudice argument is that the defendant knew about these ten phone calls and knew that that was strong evidence against him and wanted to go forward anyway, and that that is on the record. And she was there when he found out about those ten phone calls. And she knew that he knew what was on those phone calls. So she's thinking, and maybe it's putting words in her mind, but she's thinking, so clearly this didn't make any difference to him at that time. And so I'm not, it would have been nicer if she'd written it up that way instead of incorporating by reference what the government said. I think it would have been nicer, but, you know, I wasn't there. To me it's not a matter of whether it would have been nicer or not. I just think that what you've just said constitutes some inferences that we should not be making. What specifically are those? The inferences. That you're referring to. Now we're right at the core of the case, it seems to me. That Mr. Christopher had looked at the discovery, number one, or was aware of it, and that his lawyer had looked at the discovery, number two. But when we're talking about prejudice, we're just talking about whether he would have gone ahead anyway. The defendant would have gone ahead anyway. No, I understand, but to me that's, we need to. We're talking about whether he might have, might reasonably have, one might reasonably conclude that he might have gone a different route when he had a whole lot of information that should have clued him that this was a low percentage. In my hypothetical, it's like he should have known, he should have and probably did know that it was only a 5% chance instead of a 60% chance. Because there was all that stuff on the record that Judge Edmonds watched, which conveyed that to him. That would be the argument. Do you see what I'm saying? I do. As an attorney or as a judge, I think we can agree he should have known that. I don't think the record is clear, and I think it should be clear before a decision is made as to what he did know. Okay. Thank you. Thank you. The case is submitted.